UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWAN PIERCE THURMOND,

              Plaintiff,                      Case No. 15-13167
                                        District Judge Laurie J. Michelson
v.                                   Magistrate Judge R. Steven Whalen

CITY OF SOUTHFIELD, et al.,

              Defendants.
_____/

## REPORT AND RECOMMENDATION

       This action is brought pursuant to 42 U.S.C. §1983. Plaintiff Dawan Pierce

Thurmond, proceeding *pro se,* filed an amended complaint on September 25, 2015 [Doc.

#16], naming a number of Defendants and a number of constitutional claims. Before the

Court is a Motion for Judgment on the Pleadings [Doc. #132] filed by Defendants City of

Southfield, Dawn King, Lawrence Porter, Darrell Palmer, and Officer Theriault, which

has been referred for a Report and Recommendation under 42 U.S.C. § 636(b)(1)(B). For

the reasons discussed below, I recommend that the motion be GRANTED IN PART AND

DENIED IN PART, specifically, DENYING as to the Fourth Amendment/Excessive

Force claim, and the claim alleging the seizure of Plaintiff's money, against Defendant

Porter, and GRANTING as to all other claims and all other Defendants.

-1-

## I.   FACTS

The events leading up to Mr. Thurmond's lawsuit began on the evening of November 19, 2013, when he had a verbal confrontation with a security guard at the Northland  Mall in Southfield, Michigan.  Mr. Thurmond, a self-proclaimed film director who was there with some other people, alleges that the security guard told him that he could not walk with more than six people in a group. *Amended Complaint* [Doc. #16], p. 6. After some further conversation, Mr. Thurmond told the guard that he had a concealed pistol license, and that he was "carrying a weapon to avoid any issues." *Id*.

After leaving Northland Mall, Plaintiff was pulled over by Defendant Sgt. Porter. Plaintiff told Sgt. Porter that he was armed, and that he had a Concealed Pistol License. Sgt. Porter accused him of threatening a security guard at the mall. *Id*. Plaintiff alleges that when Sgt. Porter attempted to force him to the ground, he told Porter that he had suffered a head and neck injury in an automobile accident. He asked Porter to call EMS because he had a sharp pain in his neck. Plaintiff states that an ambulance was requested but did not show up. *Id*. 6-7. He was not arrested at that time, but cash and property, including his gun and his camera, were seized from his car. Plaintiff checked himself into an emergency room, where he was treated for his injuries. *Id*.

Plaintiff alleges that on November 21, 2013, he notified "City Attorneys" via a fax that he wanted his property back. He also made a Freedom of Information Act ("FOIA") request for Sgt. Porter's dash cam video. The same day, he received a voice mail message

from Defendant Dawn King, who instructed him to contact the detective in charge of the case. Within an hour of receiving that message, he received a voice mail from Defendant Detective Palmer, informing Plaintiff that he was requesting a warrant from the Oakland County Prosecutor's Office, charging him with transporting a loaded shotgun. *Id*. 7. Plaintiff claims that Palmer left several other messages, threatening him with "cruel and unusual punishment," and stating that he would be in court to see Plaintiff plead guilty. He alleges that these statements deprived him of a fair trial. *Id*. 7-8.

Plaintiff alleges that the Oakland County Prosecutor's Office were derelict in their duty to investigate Sgt. Porter's "criminal misconduct," pursuant to the Michigan Rules of Professional Conduct for attorneys. He further alleges that "attorneys" strategically decided to suppress his FOIA request with the intent to conceal facts related to his complaint against Sgt. Porter. *Id*.

Following the issuance of the warrant, Plaintiff self-surrendered to the Southfield Police Department, where Palmer threatened to make his bond $10,000. Plaintiff claims that at his arraignment, Palmer made threats to him. He further states that Officer Theriault was named as a "victim" in Count Two of the criminal complaint, which was not true. Thus, he says, the complaint was filed in bad faith. *Id* 8. At his initial appearance, the magistrate set bond at the $10,000 recommended by the prosecutor.[1]  On

---

[1] Plaintiff does not indicate whether this was $10,000 cash or the more typical 10% bond.

May 28, 2014, a state district court judge lowered his bond. *Id*. 8-9.

Preliminary examination was held on June 2, 2014. Plaintiff alleges that the prosecutors allowed Sgt. Porter to commit perjury while testifying under oath. Plaintiff was bound over to Circuit Court, although the prosecutor's motion to amend the complaint to add a charge of felonious assault was denied. Plaintiff alleges that at the arraignment on the information, Assistant Prosecuting Attorney Andrew Starr "simulated facts" and assumed facts not in evidence. Plaintiff also claims he was improperly charged, based on retaliatory motive, lack of evidence, and illegal search and seizure. *Id*. 9-10.

On April 4, 2015, the state court prosecution was dismissed after Sgt. Porter failed to appear at an evidentiary hearing. Plaintiff alleges, somewhat confusingly, that on April 24, 2015, Oakland County Circuit Judge Daniel O'Brien dismissed the case. Judge O'Brien also ordered the return of his property. *Id*. 10.

Plaintiff brings the following claims:

Count I: A claim against the City of Southfield under 42 U.S.C. § 1983 for failure to adequately train its officers with regard to probable cause and searches and seizures. As a result, Plaintiff claims that his rights under the Fourth Amendment, the Due Process Clause and Equal Protection Clauses of the Fourteenth Amendment, and the Eighth Amendment were violated.

Count II: An omnibus § 1983 claim against all Defendants. Included are allegations that "Co-Defendant Officers" and the City of Southfield violated his federal

constitutional rights under the Fourth Amendment by a wrongful stop, search, and seizure, and by the use of excessive force; and that his rights were violated under the Due Process Clause; the Equal Protection Clause; the Eighth Amendment; and the infliction of unnecessary infliction of pain.

      <u>Count III</u>: A claim against all Defendants under 19 U.S.C. § 1592 for "fraud, gross negligence, and negligence."

      <u>Count IV</u>: A claim of medical malpractice against "Oakland County Jail Medical Services."

The Court has dismissed the following Defendants: Southfield City Attorneys Office, Susan P. Ward-Witkowski, Southfield Police Department, Det. Hendricks, Det. Shadwell, Officer Smith, Northland Center, County of Oakland, Oakland County Prosecutor's Office, Oakland County Sheriff, Forty Sixth District Court, Correct Care Solutions, and Oakland County Jail.

## II.   STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) of the Federal Rules of Civil Procedure is subject to the same standards of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998).  Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."   In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's

factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the legal sufficiency of a complaint, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*,  556 U.S.662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 676 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id*.

## III.   DISCUSSION

Plaintiff has taken a scattershot approach to his case, claiming every constitutional and statutory provision that in his view could conceivably form the basis for relief. This is understandable, given his *pro se* status and his undoubtedly sincere belief that he was treated badly. But while the Court construes *pro se* pleadings liberally, *see Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), Plaintiff's complaint must still meet the *Iqbal* plausibility standard.

-6-

### A.   19 U.S.C. § 1592 / Fraud, Gross Negligence (Count III)

Plaintiff relies on 19 U.S.C. § 1592 for a claim of "fraud, gross negligence, and negligence." However, this statute deals with duties and taxes on commercial imports:

> "(1) Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence--
> **(A)** may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of--
> **(i)** any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
> **(ii)** any omission which is material, or
> **(B)** may aid or abet any other person to violate subparagraph (A)."

This statute clearly has no applicability to any of Plaintiff's claims relating to his arrest or prosecution. Count III must be dismissed.[2]

### B.   42 U.S.C. § 1983 Claims (Count II)

In Count II, Plaintiff alleges a number of constitutional and statutory violations, analyzed individually below.[3]

---

[2] To the extent that Plaintiff intended to bring a state law claim of "gross negligence," that claim also would be subject to dismissal. Michigan law is clear that where a "gross negligence" claim is based on the same facts that are alleged in support of an intentional tort (such an excessive force claim), a plaintiff cannot bring a separate "gross negligence" claim. *VanVarous v. Burmeister*, 262 Mich.App. 467, 483, 687 N.W.2d 132 (2004)("Thus, plaintiff's claim of gross negligence is fully premised on her claim of excessive force. As defendants correctly note, this Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." (Citing cases)).

[3] A brief word about Defendant Officer Theriault. Plaintiff claims merely that Theriault was improperly named as a victim in the criminal charging documents,

## 1.   Eighth Amendment

The Eighth Amendment proscription against cruel and unusual punishment applies to individuals who have been convicted of crimes and are serving sentences. *Whitley v. Albers*, 475 U.S. 312, 318 (1986).  At all times set forth in his complaint, Plaintiff was in a pretrial posture. The Eighth Amendment does not apply.

## 2.   Due Process

Because Plaintiff bases his Due Process claim on other specific constitutional provisions, e.g., the Fourth Amendment, the Court must analyze his case under the more specific provisions. *Graham v. Conner*, 490 U.S. 386, 395 (1989)("Where a particular Amendment provides an explicit textual source of constitutional protection, that Amendment, not the more generalized notion of 'substantive due process,'must be the guide for analyzing such a claim"). The Due Process claim must therefore be dismissed.

## 3.   Equal Protection

In *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011), the Sixth Circuit described the elements of an Equal Protection claim as follows:

> "The Equal Protection Clause of the Fourteenth Amendment commands that 'no state shall ... deny to any person within its jurisdiction the equal protection of the laws.' U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets

---

rendering the documents as being issued in bad faith. He does not allege that Theriault himself did anything, much less violate any constitutional or statutory rights.

a suspect class, or has no rational basis.' *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir.2006). As we have held, the 'threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers.' *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006)."

The complaint in this case contains no factual allegations of disparate treatment, i.e., that Plaintiff was treated differently from similarly situated individuals that were not in his protected class. His Equal Protection claim fails under *Iqbal*, and must be dismissed.

### 4.    Freedom of Information Act

Plaintiff alleges that he faxed a FOIA request to the Southfield City Attorney's Office, requesting Sgt. Porter's dash cam video. This was a request under the Michigan FOIA, and he received a call-back from Defendant Dawn King. Ms. King directed him to the officer in charge of the investigation.

First, an alleged violation of state law cannot form the basis of a § 1983 suit. *See Embody v. Ward*, 695 F.3d 577, 581 (6th Cir. 2012)("violation of a state statute does not infringe the federal Constitution").

Secondly, to the extent that Plaintiff alleges a violation of the Michigan FOIA, he has failed to state a plausible claim against any of these Defendants. The Southfield Police Department is a "public body" under M.C.L. § 15.232(d)(iii).  FOIA requests must be made in writing to the public body's FOIA coordinator.  M.C.L. §§  15.233(1) and

15.235(1).  Plaintiff states that he faxed a request to "attorneys," and that he received a call from Defendant King of the City Attorney's Office. Ms. King is not an agent of the Police Department, and thus, assuming that it is she that Plaintiff accuses of violating the FOIA, she had no duty to respond. She did, however, refer him to the Police Department, the correct agency to which a FOIA request should be directed. However, Plaintiff does not allege that he made a proper FOIA request to the Department's FOIA coordinator.

### 5.   Fourth Amendment Claims

### a.   Initial Stop of Plaintiff's Car

To the extent that Plaintiff claims that the stop of his vehicle was an unreasonable seizure, that claim is without merit. Police may stop a car based on probable cause. Generally, probable cause exists when the police have "reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Information or complaints that police officers receive from identified citizens or other police officers is presumptively reliable. *See People v. Powell*, 201 Mich.App 516, 523, 506 NW2d 894 (1993). Plaintiff alleges that Sgt. Porter told him he had been accused of threatening a security guard at the mall. It may therefore be reasonably inferred from Plaintiff's complaint that the information the police had came from the Northland security guard who had a run-in with the Plaintiff, and who reasonably interpreted Plaintiff's statement that he had a CPL license as a threat. Given this information, the police had

-10-

probable cause to stop the Defendant's car.[4]

**b.   Seizure of Property from Plaintiff's Car**

Plaintiff alleges that the police seized his firearm and camera from his car, as well as $2,000 in cash. These items were in plain view following the stop. In *Payton v. New York*, 445 U.S. 573, 586-587 (1980), the Supreme Court stated that "objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." Here, the firearm and the camera constituted evidence of a criminal offense, i.e., the alleged assault/threat to the Northland security guard. In addition, the exigency of the circumstances occasioned by the fact that the firearm and the camera were in an automobile provides justification for a warrantless seizure. "The Supreme Court has noted that '[t]he mobility of automobiles, ... creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.'" *United States v. Swanson*, 341 F.3d 524, 532-33 (6th Cir. 2003)(quoting *California v. Carney*, 471 U.S. 386, 391 (1985)). Plaintiff has not stated a plausible Fourth Amendment claim based on the seizure of the firearm and the camera.

However, there was no basis for the police to believe that the Plaintiff's money

---

[4] Even if the police lacked probable cause based on the Northland guard's complaint, they at a minimum had sufficient information to make an investigatory stop. *See Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000).

was connected to the criminal activity alleged–an assault. As pled, there was no probable cause for Sgt. Porter's seizure of the money, and the motion to dismiss should be denied as to that aspect of his claim.

### c.    Excessive Force

Plaintiff has also pled a plausible claim of excessive force against Sgt. Porter. A claim of excessive force is analyzed under the Fourth Amendment's reasonableness requirement.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).   In *Gaddis v. Redford Township*, 364 F.3d 763,772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

In this case, the complaint alleges that as Sgt. Porter was "forcing him to the ground," he told the officer that he had suffered a back and neck injury. Plaintiff then requested an ambulance because of a sharp pain in his neck. He subsequently went to an emergency room, where his injuries were treated. Clearly, then, the Plaintiff alleges the use of force, accompanied by an injury requiring medical attention. While, depending on the circumstances that are explored during discovery, the Plaintiff may or may not ultimately survive summary judgment, he has stated a plausible claim under *Iqbal* at the

-12-

pleading stage. Defendant Porter's motion to dismiss should be denied as to the excessive force claim.

### 6.   Municipal Liability of City of Southfield

Under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978), § 1983 liability cannot be imposed on a theory of *respondeat superior*. In terms of municipal liability, *Monell* held:

> "A municipality cannot be held liable *solely* because it employs a tortfeasor
> - - or, in other words, a municipality cannot be held liable under § 1983 on a
> *respondeat superior* theory." *Id.*, 436 U.S. at 691. (Emphasis in original).

Instead, a municipality incurs liability only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*; *Pembaur v. Cincinnati*, 475 U.S. 469, 477 (1986).  In  *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained, "The requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that the municipality is held responsible only for the latter."

Other than conclusory and non-specific allegations, Plaintiff has not pled any facts indicating that in seizing Plaintiff's money and allegedly using excessive force, Sgt. Porter was acting in accordance with any City policy. He has failed to state a plausible claim of municipal liability, and the claim against the City of Southfield should be dismissed.

-13-

## IV.   CONCLUSION

For these reasons, I recommend that Defendants' Motion for Judgment on the Pleadings [Doc. #132] be GRANTED IN PART AND DENIED IN PART, as follows:

(1) That the motion be DENIED as to Fourth Amendment/ § 1983 claims against Defendant Sgt. Porter based on the alleged seizure of Plaintiff's money and the alleged use of excessive force.

(2) That in all other respects, the motion be GRANTED, and that all claims against all Defendants, except for the Fourth Amendment claims in the preceding paragraph, be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6ᵗʰ Cir.  1991); *United States v. Walters*, 638 F.2d 947 (6ᵗʰ Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6ᵗʰ Cir.  1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6ᵗʰ Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


                                            s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            United States Magistrate Judge

Dated: February 27, 2017



                        CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 27, 2017, electronically and/or by U.S. mail.

                                            s/Carolyn M. Ciesla
                                            Case Manager

-15-